**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,         )<br>                                              )<br>            Plaintiff,              )<br>                                              )<br>vs.                                        )<br>                                              )<br>2005 Toyota Sequoia,)<br>VIN:5TDZT38AX5S239010,  )<br>                                              )<br>            Defendant.            )<br>_____) | No. CV 09-2012-PHX-JAT<br><br>**ORDER** |

Pending before this Court is the United States of America's ("Plaintiff") Motion to Strike Claim and Answer of Mukhtiar Singh. (Doc. 21) Mukhtiar Singh ("Claimant") filed a Claimant's Opposition to Motion to Strike Claim and Answer. (Doc. 22) The Court now rules on the Motion.

**I.    Facts**

This case stems from an investigation that the Bakersfield, California division of the Drug Enforcement Administration ("DEA") initiated against Parminder Toor ("Toor" or "criminal defendant") for drug trafficking. On May 4, 2009, a Confidential Source ("CS") alerted the DEA Phoenix Division Office that Toor had asked the CS to transport fifty kilograms of cocaine from Phoenix, Arizona to Seattle, Washington. The CS's compensation for the trip would be $300 per kilogram of cocaine, for a total sum of $15,000.00. The DEA ultimately located Toor in Bakersfield, California, from where Toor allegedly was directing

the drug trafficking operation.

On May 5, 2009, the CS picked up two duffle-type bags of cocaine at a designated location in Phoenix. Per Toor's instructions, the CS then drove from Phoenix to Sacramento, California, to discuss further transport of the cocaine to its final destination in Seattle. Toor drove to and from this meeting in a 2005 Toyota Sequoia ("defendant vehicle"). The day following the Sacramento meeting, law enforcement officers arrested Toor at his residence. Mukhtiar Singh, Claimant, who is also Toor's father-in-law, and an unidentified relative were present at the scene of the arrest.

After locating the defendant vehicle in the garage of Toor's residence, the arresting officers inquired as to the ownership of the vehicle. Because Claimant did not speak English, he enlisted the help of the unidentified relative to function as his translator. Claimant answered that the vehicle was in his name; however, he also confirmed that Toor was the primary and actual owner of the defendant vehicle. The law enforcement officers searched the defendant vehicle and discovered some white crystal substance, which the lab tests later identified as methamphetamine. Following the arrest, Toor was charged with and is currently being prosecuted for Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846.

**II.     Procedural History**

On July 1, 2009, Claimant submitted a claim in the administrative forfeiture action with the DEA claiming ownership of the vehicle. Subsequently, Plaintiff filed a Verified Complaint *in rem* seeking to forfeit the defendant vehicle seized at the criminal defendant's residence. Plaintiff alleges that the vehicle is subject to forfeiture under 21 U.S.C. § 881(a)(4) because the vehicle was used, or was intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances in violation of the Controlled Substances Act. In response to Plaintiff's Verified Claim, Claimant timely filed a verified claim to the defendant vehicle as the owner of such property. Thereafter, Claimant filed an Answer to Plaintiff's claim.

1   On January 15, 2010, Plaintiff mailed a set of Special Interrogatories to Claimant to
2   gather information concerning Claimant's relationship to the vehicle. After initially failing
3   to respond, Claimant complied with a Court order and filed responses. In the interrogatory
4   responses, Claimant re-asserted his ownership claim to the vehicle. Claimant indicated the
5   following: (1) Claimant obtained a loan, in his own name, to finance the purchase of the
6   vehicle; (2) Claimant obtained an insurance policy, in his own name, to cover the vehicle;
7   (3) Claimant asserted his daily use of the vehicle; (4) Claimant explained that he made
8   several payments toward the insurance policy coverage and as repayment of the loan.
9   Claimant also admitted that the criminal defendant: (1) was included on the insurance policy;
10  (2) used the vehicle; and (3) together with his wife, Claimant's daughter, paid off a large
11  portion of the loan, as well as; (4) made payments toward the insurance policy on Claimant's
12  behalf. Plaintiff did not challenge the validity of Claimant's responses or the documentation
13  provided as corresponding proof. Nor did Plaintiff assert a failure on Claimant's part to fully
14  answer the questions posed to him in the interrogatories.

15  On July 14, 2010, Plaintiff filed a Motion to Strike Claim and Answer of Mukhtiar
16  Singh. Plaintiff challenges Claimant's standing to contest the forfeiture action. Despite
17  ample case law on this issue, Plaintiff inexplicably diverged from the established Article III
18  standing analysis.

19  Plaintiff alleges that Claimant lacks standing due to his failure to meet the definition
20  of ownership set out as a requirement for the "innocent owners" affirmative defense under
21  section 983(d) of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. §
22  983. Plaintiff asserts that because Claimant is allegedly not an "owner" for purposes of an
23  affirmative defense, Claimant lacks sufficient interest in the vehicle to contest a forfeiture
24  action. However, Plaintiff failed to explain why such standard should be applied to determine
25  Article III standing. After reviewing the relevant case law, the Court finds Plaintiff's
26  asserted standard improper and thus inapplicable to the determination of Claimant's standing.
27  *See United States v. Hooper*, 229 F.3d 818, 820 n.4 (9th Cir. 2000) (claimant's failure to
28  "establish on the merits a property interest entitling [claimant] to relief" does not result in a

lack of standing to contest the forfeiture action); *see also United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (held that even "bare legal title" was sufficient to confer standing).

### III.    Legal Standard

Any person claiming an interest in the property subject to forfeiture action can contest such action by filing a claim in the court where the action is pending. Supp. R. Certain Adm. & Mar. Cl. G(5)(a)(I). In response, the government may move to strike the claim for lack of standing. *Id.* at G(8)(c)(i)(B). The government may present the motion to strike as a motion for summary judgment challenging "whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." *Id.* at G(8)(c)(ii)(B).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However,

1 in the summary judgment context, the Court construes all disputed facts in the light most
2 favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.
3 2004). The evidence of the non-movant is "to be believed, and all justifiable inferences are
4 to be drawn in his favor." *Anderson*, 477 U.S. at 255. But, if the evidence of the non-
5 moving party is merely colorable or is not significantly probative, summary judgment may
6 be granted. *Id.* at 249-50.

## IV. Discussion

Claimant's constitutional standing is a threshold issue that must be addressed prior to considering the merits of the parties' claims. *United States v. Real Property Located at 5208 Lost Franciscos Way, Los Angeles, CA*, 385 F.3d 1187, 1191 (9th Cir. 2004); *United States v. $148,840.00 in United States Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). The government should not have to meet its burden of proof if the claimant fails to demonstrate that he or she has the requisite "facially colorable interest," deprivation of which would harm such claimant. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002); *see also Real Property Located at 5208*, 385 F.3d at 1191. The burden of proof to demonstrate sufficient interest varies depending on the stage of the case, and the claimant must continue to support his or her standing throughout the various stages of the case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also United States v. $133,420.00 in U.S. Currency*, 2010 WL 2594304, at *4 (D. Ariz. 2010).

At the pleading stage, a claimant's burden of proof "is not a heavy one." *United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1140 (9th Cir. 2008). By merely asserting an ownership interest, a claimant can either bring a motion to dismiss or defeat such motion. *Id.*; *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994), *superseded on other grounds as stated in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). At the summary judgment stage, a claimant has a heightened burden of proof. *$133,420.00*, 2010 WL 2594304, at *6 ("something more than a mere allegation is necessary to support standing at the summary judgment and trial stages"). A court may grant the government's motion for

- 5 -

1 summary judgment if a claimant fails to establish standing by a preponderance of the
2 evidence. Supp. R. Certain Adm. & Mar. Cl. G(8)(c)(ii)(B). A claimant does not have to
3 "definitively prove the existence of that interest," but must supplement his or her assertion
4 of the interest with corroborating evidence. *$148,840.00*, 521 F.3d at 1273. The type of
5 requisite evidence is tied to the type of interest that the claimant chooses to assert. *Id.* at
6 1274.

7 In the case of ownership interest, a claimant must assert to be an owner of the
8 defendant property and provide "some evidence" to substantiate his or her claim. *United*
9 *States v. U.S. Currency, $81,000.00*, 189 F.3d 28, 35 (1st Cir. 1999). This evidence may
10 consist of "showing actual possession, control, title, or financial stake." *Real Property*
11 *Located at 5208*, 385 F.3d at 1191. To determine ownership interest, the Court must look
12 to "the law of the state in which the interest arose." *Id.*; *see Hooper*, 229 F.3d at 820.

13 The government may challenge the assertion of ownership, the validity of the
14 corroborating evidence, or the existence of such evidence. In one case, the government
15 successfully challenged the claimant's assertion of ownership where the claimant asserted
16 ownership and subsequently hid behind the 5th Amendment shield when asked to explain his
17 relationship to the defendant property. *$133,420.00*, 2010 WL 2594304; *cf. $148,840.00*,
18 521 F.3d at 1277 (under similar facts the court held that because the government did not
19 move to strike the claimant's assertion of ownership such claim became part of the record).
20 When the court used its discretion to strike the claimant's assertion of ownership, the
21 claimant was left with nothing more than a "[m]ere unexplained possession," which is
22 insufficient to establish standing. *$133,420.00*, 2010 WL 2594304, at *7.

23 In another case, the government contested the validity of the claimants' title, asserting
24 that the fraudulent transfer of title to the claimants controverted the claimants' evidence of
25 ownership. *Real Property Located at 5208*, 385 F.3d at 1191. Because the claimants failed
26 to respond to the government's accusations, the court properly accepted the government's
27 challenge to the validity of the claimants' ownership interest, thereby defeating claimants'
28 standing to contest the forfeiture action. *Id.* at 1192. Accordingly, short of the government's

1 unopposed or valid challenge to a claimant's assertion of ownership or corroborating
2 ownership evidence, or both, the claimant should be permitted to contest a forfeiture action.
3      In this case, Plaintiff has presented its motion to strike as a motion for summary
4 judgment; however, Plaintiff has not met that standard.  Although the Court finds no material
5 issue of fact in dispute, Plaintiff has failed to prove that Claimant lacks Article III standing
6 to contest the forfeiture.  Claimant has continuously asserted ownership of the vehicle.  When
7 the law enforcement officers raided the criminal defendant's residence, an officer inquired
8 as to whom the vehicle belonged. (Doc. 1 at ¶ 41.)  Claimant, who was present at the time
9 of the raid, responded that "the vehicle was in his name." (Doc. 1 at ¶ 43.) Upon further
10 prompting, Claimant affirmatively answered the officer's question of whether "the defendant
11 vehicle was actually Toor's." (Doc. 1 at ¶ 44.)  Claimant further admitted that criminal
12 defendant was "the primary driver and made most of the payments" on the defendant vehicle.
13 (Doc. 1 at ¶ 43.)  These statements are consistent with the Claimant's responses to Plaintiff's
14 interrogatories.  Claimant's assertion that the vehicle "was in his name" together with
15 Plaintiff's explicit concession that Claimant has "legal title" and is the "titled owner of the
16 vehicle" support Claimant's standing as an owner of the vehicle.  (Doc. 1 at ¶ 43; Doc. 21
17 at 10-11.)
18      Both California and Arizona statutes equate legal title with ownership of a motor
19 vehicle.  *See* A.R.S. 28-101(40)(a) (West 2010); Cal. Veh. Code § 460 (West 2010).  The
20 fact of legal title is uncontested.  The Court therefore accepts Claimant's legal title to the
21 vehicle as an uncontroverted fact.  Consequently, Claimant has ownership interest to
22 establish standing.  The Court's ruling on standing in no way reflects an opinion regarding
23 Claimant's ability to prevail on an innocent owner defense.

24 **V.    Conclusion**
25      Based on the foregoing,
26 ///
27 ///
28 ///

1  **IT IS ORDERED** that the Court denies Plaintiff's Motion to Strike Claim and
2  Answer of Mukhtiar Singh (Doc. 21).
3  DATED this 25th day of October, 2010.

_____
James A. Teilborg
United States District Judge